LOUISE VON RICHTHOFEN v. THE BIJOU IRRIGATION DISTRICT.

EMINENT DOMAIN—*Damages to Land Not Taken*—Both the constitution (art. II, sec. 15) and the statute of Eminent Domain (Rev. Stat. sec. 2431) contemplate that compensation shall be made in money to one who by a public improvement sustains injury to lands not taken. The land owner cannot be required to accept a structure or device of the petitioner, intended to lessen such damage, and which is no part of the improvement for which his land is taken—(531-533).

The land owner is entitled to make such provision for himself, and receive as an element of his damages what it will cost him—(532).

The petitioner sought to condemn, through lands of the respondent, a way for an intake ditch. The line of this structure was located in porous and sandy soil. Below it were improved lands of respondent, liable to injury by seepage from the proposed ditch. *Held*, that in ascertaining the damages which respondent might sustain by such seepage the jury were not to take into account another and separate ditch constructed by petitioner, below that in question, and which it was alleged would collect the seepage—(529-532).

*Error to Weld District Court.*—Hon. J. E. GARRIGUES, Judge.

Mr. H. E. CHURCHILL and Mr. H. M. BAKER, for plaintiff in error.

Messrs. STEPHENSON & WORK, Mr. ROBERT M. WORK, Mr. JAMES W. McCREERY, and Mr. DONALD C. McCREERY, for defendant in error.

Defendant in error, as petitioner, instituted proceedings in the court below under the Eminent Domain Act, to condemn a right of way across the lands of plaintiff in error, as respondent, upon which to construct an intake ditch to its reservoir. An order was entered, granting

petitioner temporary possession of the right of way sought to be condemned pending the final determination of the proceedings. Respondent, by answer, averred that the intake ditch was located through, along and above land belonging to her, most of which was improved and irrigated, and of great value; that the ditch was constructed in a sandy, coarse and porous soil through which the water would percolate freely, so that when the ditch was operated her land below would be greatly damaged by seepage. The hearing was before the court and a jury. At the conclusion of the testimony, the jury viewed the premises, and thereafter returned a verdict in the statutory form, fixing the value of the land actually taken at $210.00, damages to the remainder, $1,600.00, benefits nothing. Upon this verdict a judgment was entered, which respondent has brought here for review on error.

At the trial petitioner, over the objection of respondent, was permitted to introduce evidence to the effect that subsequent to the institution of the proceedings in the case at bar, petitioner commenced another proceeding under the Eminent Domain Act, to condemn a right of way across the lands of respondent below the right of way sought to be condemned for the intake ditch, upon which to construct a seepage ditch, known as the "Bull Ditch," the purpose of which was to intercept the seepage escaping from the intake ditch, and that it would intercept a large part of such seepage, which would otherwise reach respondent's land, and on account of which she demanded damages. The seepage ditch was an entirely independent structure, upon a separate right of way, and in no sense a part of the intake ditch. The evident purpose of this testimony was to establish facts which would lessen the damage to the residue of respondent's land from seepage as the result of the construction and maintenance of its

intake ditch. That this was the theory of counsel, for petitioner as well as the view entertained by the trial court, and so understood by the jury, is manifest from the remarks of the judge on the subject of the admission of the testimony relating to the interception of seepage by the Bull Ditch, regarding which it was said: "I don't mean this petitioner has a right to make a deduction or get credit because it built a seepage ditch, if it did; but if there is a seepage ditch on the ground which will tend to carry away the seepage, then the land might not be damaged to that extent by seepage. The jury may see the seepage ditch if one is there, and form an opinion as to the effect it may have in carrying away seepage. Would they not have a right to take that into consideration? * * * I simply hold that everything now on the ground that might either prevent or increase seepage is a matter for the proper consideration of the jury in arriving at the damages to the residue of the land."

Over the objection of respondent, the court gave the following instruction:

"The evidence tends to show that petitioner, or some one in its behalf, has constructed a drainage ditch, called during the trial a "Bull Ditch," across portions of her land not taken. In your award, you cannot allow petitioner any pay, or compensation, for the construction of this seepage ditch, but in arriving at the damages, if any, to the residue of her land occasioned by the taking, on account of the likelihood or probability, if any, of seepage from the said Empire ditch (the intake ditch), you should take into consideration this seepage ditch, as it now exists, and in its present condition, as constructed on the land, but should not consider promises or future plans, if any, of petitioner to enlarge, extend or maintain the same."

On behalf of respondent the following instruction was requested, which was refused:

"The court instructs the jury that since the construction of the Empire inlet ditch across the lands of the respondent, under an order of temporary possession, the petitioner has commenced the construction of a drain or seepage ditch upon other portions of the land of respondent. You are instructed that you should not consider said second ditch in any manner in this suit, but are to assess the injury, if any, and the benefit, if any, to the residue of the lands of respondent as though said ditch or portion thereof had not been constructed, or the lands of respondent disturbed thereby."

Mr. Justice Gabbert delivered the opinion of the court.

The purpose of the testimony objected to, and the effect of the instruction given, was to permit the jury, in determining the damages to the residue of the land of respondent, to take into consideration the fact that petitioner had constructed the drain ditch, and that thereby seepage water which would otherwise find its way on to the lands of respondent would be intercepted, and thus her damages on that account lessened. On this subject the trial court ruled and instructed to the effect that while petitioner was not entitled to any compensation for the construction of the drainage ditch, yet in assessing the damage to the lands of respondent, that would be caused by seepage from the intake canal, the existence of the drainage ditch and its effect in arresting or preventing seepage, should be taken into consideration. So that the only question presented for determination is, whether or not respondent's damages could be lessened by a consideration of these matters. She is entitled to her damage

before the title to her land is taken by petitioner. The damage which she will suffer from this seepage and the expense necessary for her to incur and continue in order to reduce such damages to the minimum, is what she is entitled to recover and receive in money. In constructing appliances with this money in order to avoid injury to her land from seepage, she is entitled to exercise her own judgment, and cannot be required to accept, in advance, the arrangements which petitioner seeks to make for her, by the construction of an independent ditch. If, by the existence of the seepage ditch at the present time, her damages are to be lessened, there is no guarantee on the part of the petitioner that it will be continued and maintained. If it is not, then respondent will be deprived of her land without payment of the damages in advance, which the constitution and the statutes contemplate shall be done, as a condition precedent to depriving her of her title; for she would have naught, in so far as her damages were reduced by the consideration of the existence of the seepage ditch and its likelihood to prevent injury to her lands, with which to compensate her for the expense she must incur in order to prevent damage from seepage in the event the petitioner should abandon the drain ditch or fail to keep it in repair.

The law provides that certain benefits may be considered in assessing damages for land taken under the Eminent Domain Act, but such benefits are those growing out of the improvement itself, and not those derived from some other independent improvement. Respondent is entitled to have the "just compensation" provided by law paid in money, and she cannot be required, in lieu thereof, to accept, in whole or in part, any benefit except she consents, which the law does not recognize. The money she is entitled to receive as damages she may employ in any

way, and for any purpose, she may choose. She is under no obligation to use it in constructing a drainage ditch. She may do so if she chooses, but if she does not, the petitioner cannot complain. She may prefer to invest it in some other enterprise rather than in expending it in preventing injury to her land. And yet, should the instruction of the court be upheld, she would be deprived of the authority to control her own affairs and exercise her own judgment in matters of this kind.—*Central Oh. R. R. Co. v. Holler,* 7 Oh. St. 220; *Chesapeake & Oh. R. R. Co. v. Patton,* 6 W. Va. 147; *Chi., M. & St. P. Ry. Co. v. Melville,* 66 Ill. 329; *Railroad Co. v. Halstead,* 7 W. Va. 301.

But it is not necessary to discuss the subject further, because it is clear, from the decisions of this court in *Burlington & C. R. Co. v. Schweikart,* 10 Colo. 178, and *Great Western Ry. Co. v. Ackroyd,* 44 Colo. 454, that the trial court erred in admitting the testimony referred to, and in instructing the jury, as also by refusing to give the instruction requested. From these cases, the principle which controls the case at bar is deducible; which is to the effect that the constitution and the Eminent Domain statute contemplate a compensation in money to one whose lands are taken under the Eminent Domain Act; that these requirements cannot be satisfied or dispensed with by requiring him to accept a plan, device or structure of the petitioner designed to lessen his damage, which is no part of, and entirely independent of the structure or improvement for which the land is taken, but that he is entitled to make such provision for himself, and recover, as an element of his damage, what it would cost him.

Respondent's damages should have been assessed without regard to the seepage ditch. We might add, that

the case was tried before the opinion in the *Ackroyd* case was handed down.

Counsel for petitioner call attention to authorities wherein it has been held that any fact which, by reason of the conditions upon which the property is taken, or the character of the improvements, or the manner in which it is made, or the nature and situation of the land taken, or the residue, tends to reduce the damages otherwise accruing to the land owner, may properly be considered in favor of the appropriator in the assessment of damage. It is not necessary to go into a discussion of this proposition, for the very obvious reason that the ditch which petitioner contended below should be considered in assessing damages, is in no sense connected with, or a part of, the intake canal.

The judgment of the district court is reversed and the cause remanded for further proceedings in harmony with the views expressed in this opinion.

*Reversed and remanded.*

CHIEF JUSTICE CAMPBELL and MR. JUSTICE BAILEY concur.

Decided June 5, A. D. 1911. Rehearing denied July 1, A. D. 1912.