# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-01100-COA

ROBIN SEALE AND LAWRENCE "JR" SEALE        APPELLANTS

v.

MISSISSIPPI TRANSPORTATION        APPELLEES
COMMISSION AND PONTOTOC COUNTY
BOARD OF SUPERVISORS

| | |
|---|---|
| DATE OF JUDGMENT: | 09/23/2024 |
| TRIAL JUDGE: | HON. KELLY LEE MIMS |
| COURT FROM WHICH APPEALED: | PONTOTOC COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | DAVID EARL ROZIER JR. |
| | JENESSA CARTER HICKS |
| | VICTOR B. BISHOP |
| ATTORNEYS FOR APPELLEES: | DANIEL B. SMITH |
| | PAYTON W. ACY |
| | DANIEL J. GRIFFITH |
| | ARNOLD U. LUCIANO |
| | McKENZIE W. PRICE |
| NATURE OF THE CASE: | CIVIL - PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 03/24/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., McDONALD AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1. Robin and Lawrence "JR" Seale appeal the order of the Pontotoc County Circuit Court dismissing their complaint against the Mississippi Transportation Commission (the Commission) and the Pontotoc County Board of Supervisors (the County). Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. In 2016, the Commission and the Pontotoc County Board of Supervisors began a road

relocation project known as the Q.T. Todd Road Project ("road project").[1] The Seales own approximately ninety-six acres of land in Pontotoc County adjacent to the road project and across from "the uncovered lumber yard" of a furniture store. The property is the Seales' homestead, and they raise cutting horses and other livestock on the property. The Seales' property includes a pond, known as "Seale Pond," through which Johns Creek passes.

¶3.     The Seales filed a complaint in the United States District Court for the Northern District of Mississippi on September 19, 2019. They brought this complaint as a "citizens' suit" under "Section 505 of the Federal Water Pollution Control Act (the Clean Water Act) 33 U.S.C. § 1365, for injuries they have suffered [s]ince November 2016, continuing to present and expected to continue through the future." In this complaint, the Seales allege that as a result of work done on the road project and rain events during the course of the project, Seale Pond and Johns Creek were flooded. The Seales contend this flooding "denied [them] access to portions of their property at times and has created flooding and ancillary issues in and around Seale Pond . . . at times . . . rendering their property unusable." They also allege that this flooding has impaired their use and enjoyment of their land, has caused the fair market value of their property to diminish, caused fish to die, harmed the water quality of the pond and the creek, and caused dangerous conditions such as erosion and flooding. In addition to damages under the Clean Water Act, the complaint also sought damages for negligence, a public nuisance, private nuisance, trespass, and inverse condemnation. On

_____

[1] In its pleadings, the Commission contends that the contract for the project was awarded to S & S Excavation LLC on March 8, 2016. Work began on the road project in May 2016, and most of the work on the contract ceased in 2017. The final maintenance release was issued by the Commission in July 2018.

2

March 10, 2020, the federal suit against the County and the Mississippi Department of Transportation was voluntarily dismissed, without prejudice, by two separate agreed orders pursuant to Federal Rule of Civil Procedure 41(a).

¶4.    On the same day the federal cause of action was voluntarily dismissed, the instant suit against the Commission and the County was filed in the Pontotoc County Circuit Court, alleging claims for eminent domain/inverse condemnation, negligence, gross negligence, nuisance, and trespass. On June 26, 2020, at the ore tenus request of all parties, an order was entered staying "the progression of this case." Almost four years later, on March 6, 2024, the stay was lifted at the request of all parties.

¶5.    On April 12, 2024, both the County and the Commission filed their answers to the Seales' complaint. Shortly thereafter, the County and the Commission each filed a motion for judgment on the pleadings or, alternatively, for summary judgment, with memorandums of authority, on April 22, 2024, and on May 1, 2024.[2]

¶6.    The County raised several procedural bars in support of its motion for summary judgment.[3] First, the County contended there was improper service of process because the summons and complaint were served on counsel rather than on the president or clerk of the County Board of Supervisors. The County also contended that service was not made within

---

[2] Because documents outside the pleadings were attached to both defendants' motions and were not excluded by the trial court, we will consider the trial court's order as one granting summary judgment. *See* M.R.C.P.12(c).

[3] In its motion, the Commission adopted all the County's reasons and arguments advanced and submitted additional authorities and arguments in support of the County's motion.

120 days of the filing of the complaint pursuant to Rule 4(h).[4] Second, the County contended the plaintiffs failed to provide the statutorily required pre-suit notice to the proper party pursuant to Mississippi Code Annotated section 11-46-11(2)(a)(i).[5] Third, the County argued that all plaintiffs' claims were time-barred.[6] Fourth, the County contended that the Board of Supervisors have immunity pursuant to several statutory provisions: administrative immunity pursuant to section 11-46-9; discretionary immunity pursuant to section 11-4-9(1)(d); immunity pursuant to sections 11-46-9(1)(g), 11-46-9(1)(h), and 11-46-9(1)(p); weather immunity pursuant to section 11-46-9(1)(q); and the independent contractor exception provided in section 11-46-1(f).[7] Lastly, the County contended that all claims are without

---

[4] In response, the Seales argued that counsel for the County had agreed to accept service of process as part of the voluntary dismissal of the federal complaint; therefore, they maintain that process was timely served. The plaintiffs did not file an affidavit or other summary judgment proof in support of this argument. Plaintiffs also raised an estoppel argument and an argument that they should have been allowed additional time to perfect service of process should the trial court find against them on their other arguments.

[5] The Seales contended the County should be estopped from asserting this issue or should be found to have waived the deficiency. Further, plaintiffs argued that they substantially complied with the pre-suit notice requirement.

[6] The Seales contended that their tort claims were not time-barred by the MTCA because their claims arose from a latent injury, and the time did not begin to run until they discovered both their injury and the cause of their injury. We will address this argument further below. As to their claim of inverse condemnation, plaintiffs contended that it remains a factual question as to when their property became "unusable." However, the plaintiffs did not submit any summary judgment proof in support of an argument that the property became unusable within three years of the date their complaint was filed. This issue will also be addressed below.

[7] The Seales argued in response that these immunities were not applicable because it was the County's failure to adequately maintain the retention pond after the conclusion of the road project that caused plaintiffs' injury.

merit.

¶7. The trial court set the motions for a hearing on September 24, 2024. On September 23, 2024, however, the circuit court issued an order cancelling the September 24 hearing, finding that "after reviewing the present motions, the responses, the rebuttals, the record, and the relevant law, this Court finds the Motions are well-taken and shall be and hereby are, **GRANTED**." This appeal followed.

## STANDARD OF REVIEW

¶8. In *Horne v. Dolgencorp LLC*, 424 So. 3d 295, 298-99 (¶9) (Miss. Ct. App. 2025), this Court repeated our standard of review of a trial court's grant of summary judgment:

> "When reviewing a lower court's decision to grant summary judgment this Court will employ a de novo standard of review." *Smith v. Franklin Custodian Funds Inc.*, 726 So. 2d 144, 146 (¶6) (Miss. 1998) (citing *Moore ex rel. Benton Cnty. v. Renick*, 626 So. 2d 148, 151 (Miss. 1993)). "A de novo review of a case requires that we examine all evidence in the record in a light most favorable to the non-moving party." *Id*. "The party moving for summary judgment bears the burden of persuading the trial court that no genuine issue of material fact exists, and that they are, based on the existing facts, entitled to judgment as a matter of law." *Daniels v. GNB Inc.*, 629 So. 2d 595, 600 (Miss. 1993) (citing *Skelton v. Twin Cnty. Rural Elec.*, 611 So. 2d 931, 935 (Miss. 1992)). "The non-moving party cannot sit back and produce no evidence." *Byrne v. Wal-Mart Stores Inc.*, 877 So. 2d 462, 465 (¶3) (Miss. Ct. App. 2003). Instead, "[t]o survive summary judgment, the non-moving party must offer 'significant probative evidence demonstrating the existence of a triable issue of fact.'" *Id*. (emphasis added) (quoting *Young v. Wendy's Int'l Inc.*, 840 So. 2d 782, 784 (¶3) (Miss. Ct. App. 2003)).

## ANALYSIS

¶9. While the circuit court did not indicate the grounds upon which it granted the defendants' motions, our appellate courts have held that "the Court certainly must affirm where there is any ground disclosed by the record upon which the decision could have

5

properly been reached, notwithstanding the lower court did not make explicit its grounds." *DeFoe v. Great So. Nat. Bank. N.A.*, 547 So. 2d 786, 789 (Miss. 1989); *see also Herbert v. Herbert*, 374 So. 3d 562, 570 (¶16) (Miss. Ct. App. 2023) ("[T]his Court "may affirm the lower court's grant of summary judgment for any sufficient reason apparent from the record."); *Gates v. Gates*, 616 So. 2d 888, 890 (Miss. 1993) (stating we must affirm if the trial court's decision can be upheld for any reason); *Chitty v. Terracina*, 16 So. 3d 774, 777 (¶9) (Miss. Ct. App. 2009) ("[W]e may affirm the judgment if the court achieved the correct result and the grounds for the decision are to be found in the record."). As shown above, the trial court's dismissal could have been based upon any number of the defendants' arguments. As a result of the trial court's failure to identify the basis for the decision, we conduct our de novo review to determine whether there is *any* basis upon which we can affirm the trial court's decision.

¶10. While most of the Seales' claims are based in tort, the inverse condemnation claim is a constitutional claim. We will address these claims separately below.

*Tort Claims*

¶11. We will first consider the Commission and County's argument on appeal that the complaint is time-barred. All parties agree that the Seales' tort claims are governed by the Mississippi Tort Claims Act (MTCA). Mississippi Code Annotated section 11-46-11(3)(a) (Rev. 2019) provides:

> All actions brought under this chapter shall be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based, and not after, except that filing a notice of claim within the required one-year period will toll the statute of

6

limitations for ninety-five (95) days from the date the chief executive officer of the state entity or the chief executive officer or other statutorily designated official of a political subdivision receives the notice of claim.

"Failure to file within the time allowed is an absolute bar to any further proceedings" under the MTCA. *Id*. §11-46-11(3)(b).

¶12. While the parties agree that the MTCA is applicable, they disagree as to when the Seales' alleged causes of action accrued. In the federal action, the Seales alleged that the defendants had caused them damage since November 2016, yet they did not file suit until September 19, 2019. That action was voluntarily dismissed on March 10, 2020. According to the County's and the Commission's motions for summary judgment, the claim accrued in November 2016, as alleged in the Seales' notice of claim, the federal complaint, and in Robin Seale's deposition. The Seales argued, however, in opposition to the defendants' motions, that their claims began to run, at the earliest, **April 2017**, when they first learned who caused the problem. They contend their claims arose out of a latent injury because although the damage may have begun in November 2016, the statute did not begin to run until they were aware that their damages were a result of the defendants' actions.

¶13. For this issue, it is not necessary for this Court to determine exactly when the alleged tort causes of action accrued, whether it was in November 2016 or April 2017.[8] Even accepting the Seales' April 2017 date as correct, the federal lawsuit was not filed until over two years after the Seales contend their claim accrued; therefore, the statute of limitations for their tort claims had run even before the federal lawsuit was filed in September 2019.

---

[8] In response to the defendants' motions for summary judgment, the Seales did not produce any summary judgment proof as to the date their tort claims accrued.

Further, because the federal action was voluntarily dismissed pursuant to Federal Rule of Civil Procedure 41(a), its pendency did not toll the statute of limitations. *Clark Sand Co. Inc. v. Kelly*, 60 So. 3d 149, 162 (¶43) (Miss. 2011). Accepting the Seales' date of April 2017, their tort claims were time-barred by section 11-46-11 when the Seales filed their state court complaint on March 10, 2020.

*Inverse Condemnation*

¶14.    Concerning claims for inverse condemnation, the supreme court recently explained in *Promenade D'Iberville LLC v. Jacksonville Electric Authority*, 411 So. 3d 1050, 1066 (¶79) (Miss. 2025):

> Mississippi likewise recognizes the legal remedy of inverse condemnation for property owners whose property was taken for public use where no formal eminent domain proceeding was initiated. *Jackson Mun. Airport Auth. v. Wright*, 232 So. 2d 709, 712-15 (Miss. 1970). The concept is rooted in the Takings Clause of the Mississippi Constitution. Miss. Const. art. 3, § 17. Similar to Florida law, such claims fall outside the strictures of the MTCA. *McLemore v. Miss. Transp. Comm'n*, 992 So. 2d 1107, 1109-11 (Miss. 2008).

This Court compared the application of the statute of limitations for an inverse condemnation claim compared to claims under the MTCA in *Prystupa v. Rankin County Board of Supervisors*, 339 So. 3d 147, 157 (¶33) (Miss. Ct. App. 2022):

> Even though statutory tolling under section 15-1-49 and MTCA judicially-created tolling are both referred to as "discovery rules," it is important to apply the correct discovery rule depending on the cause of action pleaded. The statute of limitations begins to run on MTCA actions when a plaintiff knew or should have known of his injury and the wrongful act(s) that caused it. **This should not be confused with statutory tolling under section 15-1-49, which requires knowledge of the injury alone.** The supreme court made this clear in *Tupelo v. O'Callaghan*, 208 So. 3d 556 (Miss. 2017), where O'Callaghan brought an inverse condemnation claim under the Takings Clause of the Mississippi Constitution. *Id*. at 558 (¶1). **The supreme court held that**

8

**a takings claim was subject to the three-year statute of limitations under section 15-1-49.** *Id*. at 568 (¶35). **In discussing when the statute of limitations began to run, the court said that under section 15-1-49, "the proper inquiry . . . was no longer the discovery of the causative relationship between the action and the injury, but the discovery of the injury itself."** *Id*. at 569 (¶37) (internal quotation marks omitted).

(Emphasis added). Thus, a three-year statute of limitations is to be applied to the Seales' claim of inverse condemnation, and that period began to run upon "the discovery of the injury itself." It should also be noted that physical takings under Article 3, Section 17 of the Mississippi Constitution, are not continuous in nature. *See City of Tupelo v. O'Callaghan*, 208 So. 3d 556, 570 (¶41) & n.14 (Miss. 2017), where the supreme court stated:

> "It is not contended that physical takings can be continuous. This position would be inconsistent with the holdings of *Monen v. State Dep't of Highways*, 33 Colo. App. 69, 71, 515 P.2d 1246, 1247 (1973) (the right to damages accrues at the time of the taking), and *Seven Lakes Reservoir Co. v. Majors*, 69 Colo. 590, 598, 196 P. 334, 336 (1921) (statute of limitations in inverse condemnation begins to run when the taking occurs))." *See State Dep't of Health v. The Mill*, 809 P.2d 434, 441 (Colo. 1991). This Colorado Supreme Court precedent is consistent with the recommendations set forth throughout this opinion.

Thus, the controlling question on this issue is when did the alleged "taking" or "injury" occur.

¶15. As noted above, the Seales contend that their limitations period for their tort claims began to run, at the earliest, in April 2017, at which point they knew of the injury *and* the cause of their injury. As for the statute of limitations for inverse condemnation, we must look for the date they first became aware of the *injury*. While their pleadings indicate that they were aware of their injury much earlier, they produced no summary judgment proof as to when they became aware of the *injury* itself.

¶16. In *Stroud v. Progressive Gulf Insurance Company*, 239 So. 3d 516, 521 (¶15) (Miss. Ct. App. 2017), this Court stated:

Where the plaintiff asserts that his case is not barred by the statute of limitations, the burden is on him to show some legal or equitable basis for avoiding such period of limitations." *Hall v. Dillard*, 739 So. 2d 383, 387-88 (¶19) (Miss. Ct. App. 1999) (citing *Gulf Nat'l Bank v. King*, 362 So. 2d 1253, 1255 (Miss. 1978)); *accord, e.g.*, *Sullivan v. Trustmark Nat'l Bank*, 653 So. 2d 930, 931-32 (Miss. 1995); *Archer v. Nissan Motor Acceptance Corp.*, 633 F. Supp. 2d 259, 265 (S.D. Miss. 2007), *aff'd*, 550 F.3d 506 (5th Cir. 2008).

In response to the defendants' motion for summary judgment on the basis that their complaint was time-barred, the Seales had the burden to produce "significant probative evidence" to show that they first became aware of their injury within three years of the date they filed their complaint seeking damages for inverse condemnation. *Horne*, 424 So. 3d at 298-99 (¶9).

¶17. In their federal complaint filed in September 2019, the Seales alleged:

[S]ince November 2016, continuing to the present and expected to continue through the future (named defendants) have polluted and continue to pollute Johns Creek and Seale Pond . . . on the private property owned by [the Seales] via unauthorized discharges caused [by] Defendants in violation of the CWA. These discharges consist of storm water mixed with, but not limited to, wastewater, sand, silt, garbage, and industrial waste. Based on information and reasonable belief, these illegal discharges continue to occur with every, or almost every, rain event and are continuous and ongoing. . . . Together by these discharges and the subsequent pollution, the tortfeasors, MDOT and the Pontotoc Board of Supervisors have inversely condemned Plaintiff's property by significantly diminishing the market value of the property, such that the Plaintiffs can no longer enjoy their property.

It is clear, without summary judgment proof to show otherwise, that the Seales were aware of their injury, for inverse condemnation purposes, as early as November 2016 and with each subsequent "rain event." We find that the Seales have failed to produce summary judgment proof to show that they first became aware of the injury upon which their claim for inverse

10

condemnation is based, within three years of the filing of their state court complaint.

## CONCLUSION

¶18.    We find that the trial court did not err by granting summary judgment and dismissing

the complaint because the Seales' claims were barred by the applicable statutes of limitations.

¶19.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., LAWRENCE, McCARTY, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. WESTBROOKS AND McDONALD, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**